UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JAMES R., | Case No. 2:24-cv-00115 |
| Plaintiff, | Hon. Paul L. Maloney<br>U.S. District Judge |
| v. | |
| COMMISSIONER OF<br>SOCIAL SECURITY, | |
| Defendant._____/ | |

## REPORT AND RECOMMENDATION

This Report and Recommendation (R. & R.) addresses Plaintiff's appeal of Administrative Law Judge (ALJ) Margaret J. O'Grady's decision denying Plaintiff's request for Supplement Security Income (SSI). This appeal is brought pursuant to 42 U.S.C. § 405(g).

The record before the Court demonstrates that Plaintiff suffers from a number of severe medically determinable impairments, including degenerative disc disease of the back and neck, shoulder and leg issues, depression, and post-traumatic stress disorder. Plaintiff asserts that the ALJ failed to properly weigh the opinion evidence in assessing Plaintiff's Residual Functional Capacity (RFC). Plaintiff's primary argument is that the ALJ failed to give the proper weight in considering the opinion evidence of Physician Assistant (PA) Cassie Sundberg, PA-C, Dr. John Kwock, M.D., and Nurse Practitioner (NP) Carole Spickerman, NP-C. Plaintiff argues the ALJ gave too much weight to Dr. Kwock's opinion and not enough weight to NP Spickerman and PA Sundberg's opinions. The Commissioner asserts that the ALJ

1

properly considered the opinion evidence and that substantial evidence supports the ALJ's decision. For the reasons stated below, the undersigned recommends that the Court affirm the ALJ's decision.

## I.     Procedural History

### A.     Key Dates

The Plaintiff applied for Disability Insurance Benefits (DIB) and SSI on March 20, 2015. (ECF No. 6-17, PageID.1247.) Plaintiff alleged an onset date of January 23, 2004. (*Id.*) On March 27, 2018, ALJ Timothy Malloy found that res judicata preluded Plaintiff's claims prior to March 5, 2015, and that Plaintiff was not entitled to DIB since his date of last insured was December 31, 2008. (*Id.*) ALJ Malloy considered Plaintiff's SSI application as of March 5, 2015, and entered a decision denying that claim. (*Id.*, ECF No. 6-2, PageID.35-47 (ALJ Malloy's March 27, 2018, decision).) Plaintiff contested the denial of SSI beginning March 5, 2015, and this Court remanded the case to the Commissioner on February 20, 2020. (W.D. Mich. Case No. 2:18-cv-182, ECF No. 17 (Order Adopting Report and Recommendation) ECF No. 15 (Report and Recommendation).)

On March 5, 2021, following remand, ALJ Malloy entered a decision denying Plaintiff's application for SSI (ECF No. 6-18, PageID.1332-1350.) Plaintiff appealed that decision, and on May 19, 2022, this Court granted the parties stipulated order to remand the case to the Commissioner and entered Judgment in Plaintiff's favor. (*See* W.D. Mich. Case No. 2:21-cv-154 (ECF No. 24 (Stipulation and Order to remand) and ECF No. 25 (Judgment).)

After this remand, ALJ O'Grady conducted a hearing on Plaintiff's claim on February 28, 2024, and issued her decision on April 24, 2024. (ECF No. 6-17, PageID.1247-1270.) Plaintiff now appeals ALJ O'Grady's decision denying his claim for SSI benefits. Plaintiff timely filed this lawsuit on July 1, 2024.

### B. Summary of ALJ's Decision

The ALJ's decision correctly outlined the five-step sequential process for determining whether an individual is disabled. (*Id*., PageID.1248-1249.)

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) from March 5, 2015. (*Id*., at 1250.)

At Step Two, the ALJ found that the Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, status-post fusion surgeries, right shoulder disorder, status-post arthroscopic surgery, bilateral hip dysplasia and osteoarthritis, carpal tunnel syndrome, status post release surgeries, right shoulder tendon tears and adhesive capsulitis, status-post surgery, depression, post-traumatic stress disorder (PTSD), and antisocial personality disorder. (*Id*.) The ALJ discussed a number of non-severe impairments, including hearing loss, hives/urticaria, restless leg syndrome, gastroesophageal reflux disease (GERD), gout, right knee disorder, bunion deformities, dog bite, right hand arthritis, and right middle finger fracture. (*Id*.)

At Step Three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one or the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.,

3

PageID.1253.) The ALJ specifically commented on the impairments set forth in listing 1.15, 1.16, and 1.18 involving spine, shoulder, and hip disorders; listing 11.14 involving peripheral neuropathy; and mental disorders set forth in listings 12.04, 12.08 and 12.15. (*Id.*, PageID.1253-1254.)

Before going on to Step Four, the ALJ found that the Plaintiff had the following RFC:

> to perform light work as defined in 20 CFR 416.967(b) except: he is able to sit for 6 hours and stand/walk for 6 hours in a regular workday; he is frequently able to use the bilateral feet; he can occasionally climb ladders, ropes, and scaffolds and occasionally stoop, crouch, and crawl; he can frequently climb ramps and stairs and frequently kneel and balance; he can frequently reach overhead with the right upper extremity; he can frequently finger and feel bilaterally; he can occasionally work at high exposed heights and with hazards and dangerous machinery; he can understand, remember and carry out simple instructions; he requires regular work duties and expectations with occasional changes; and he is able to occasionally interact with co-workers, supervisors and the public.

(*Id.*, PageID.1256.)

The ALJ devoted over 12 pages to discussing the formulation of Plaintiff's RFC. This discussion included the following:

- a summary of the regulations regarding how the ALJ will address Plaintiff's symptoms (*id.*, PageID.1256-1257.),

- a summary of Plaintiff's statements (*id.*, PageID.1257.),

- a summary of the medical records relating to his back and leg issues, and February 2015 surgical procedures which were reportedly successful in March of 2015 (*id.*, PageID.1258-1262.) The ALJ's decision noted the following: Plaintiff exhibited full strength and could

4

rise from a seated to standing position without difficulty. In May of 2015, he reported "some residual numbness" and ongoing back pain. His surgeon indicated that Plaintiff should increase his physical activities. (*Id.*) Plaintiff reported chronic back pain with leg symptoms. (*Id.*) Imaging showed mild and moderate spinal abnormalities. Plaintiff reported neck pain and in January 2014, he underwent a C5-6 and C6-7 anterior cervical discectomy and fusion surgery followed by a C6-7 laminotomy, foraminal decompression and facetectomy later that month. (*Id.*, PageID.1258-1259.) In March and April Plaintiff reported neck and arm pain relief and in November Plaintiff reported he was doing well since his neck surgery. (*Id.*, PageID.1259.) Thereafter, he reported chronic neck pain radiating to his arms. (*Id.*) Multiple diagnostic studies showed evidence of abnormalities. (*Id.*) Plaintiff was treated for neck and low back pain with physical therapy and medications, including narcotic pain medications, steroid injections, and medial branch blocks. (*Id.*) Plaintiff continued to report neck, back, and upper extremity pain and headaches. (*Id.*, PageID.1260.) Plaintiff was treated for shoulder disorders and pain but his orthopedic provider did not think intervention was necessary and his neurosurgeon recommended conservative management believing that the symptoms originated from Plaintiff's neck treatment. (*Id.*) Plaintiff underwent left carpal

tunnel release in December of 2015, but reported some ongoing symptoms in December of 2018. (*Id.*, PageID.1261.) Testing showed mild residual carpal tunnel syndrome and sensation, but negative for cervical radiculopathy and ulnar mononeuropathy. (*Id.*) Plaintiff complained of hip pain in August of 2023. (*Id.*) An x-ray revealed mild minimal CAM deformity and mild arthritis. (*Id.*) Plaintiff was referred to physical therapy and orthopedics. (*Id.*) Plaintiff also has anxiety, depressive personality and post-traumatic stress disorders. (*Id.*)

- a summary of opinions by Dr. Kwock, NP Spickerman, PA Sundberg, Gary Kilpela, Psy.D, Barbara Jones Smith Ph.D., and Plaintiff's spouse (*id.*, PageID.1265-1268.),

- an explanation of how the ALJ arrived at RFC decision (*id.*, PageID.1261-1268.),

At Step Four, the ALJ concluded that, through the DLI, the Plaintiff had no history of Past Relevant Work (PRW). (*Id.*, PageID.1268.)

At Step Five, the ALJ considered the Plaintiff's age, education, work experience and RFC and concluded that there were significant numbers of jobs in the national economy that Plaintiff could perform. (*Id.*, PageID.1268-1269.).

## II. Standard of Review

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are

supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); 42 U.S.C. § 405(g). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. 42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and whatever evidence in the record fairly detracts from its weight. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords the administrative decision maker considerable latitude and acknowledges that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

### III. Analysis

Plaintiff argues that the ALJ erred in determining that Plaintiff could perform light work with restrictions because the ALJ failed to properly weigh and consider the opinion evidence of treating provider PA Sundberg, and consultants Dr. Kwock and NP Spickerman. On March 27, 2017, 20 C.F.R. § 416.920c implemented a regulation change for evaluating medical provider opinions. Since Plaintiff filed his claim *before the regulation change*, 20 C.F.R. §§ 404.1527, 416.927 is applicable.

Under the regulations, an ALJ must weigh all medical opinions regardless of its source. 20 C.F.R. § 404.1527(c). The following factors should be considered when determining what weight to afford a medical opinion: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)).

An ALJ affords a treating physician's opinion controlling weight when the evidence and findings are consistent with the other substantial evidence on record. 20 C.F.R. § 404.1527(c)(2); *see Miller v. Comm'r of Soc. Sec.,* 815 F.3d 825, 836-837 (6th Cir. 2016) (noting the weight assigned must account for the (in)consistency "among the examining sources and the record as a whole" and also consider the factors under 20 C.F.R. § 404.1527). Only when the ALJ does not afford great weight to a treating source's opinion is the ALJ required to apply and conduct an analysis of the factors under (c)(2)(i) and (c)(2)(ii), and (c)(3) through (c)(6). *Id*. Moreover, an

ALJ is not required to rely on medical opinions concluding that a person is, or is not, disabled since that is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d).

"As a procedural requirement, the ALJ must also provide 'good reasons' for discounting the weight to be given to a treating source's opinion." *Edwards v. Comm'r of Soc. Sec.*, 636 Fed. Appx. 645, 649 (6th Cir. 2016) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013)). These reasons must be supported by the evidence and be noted with specificity "to ensure that the rule is applied and to permit meaningful review." *Id.* (citing *Gayheart*, 710 F.3d at 376). "Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion." *Price v. Comm'r of Soc. Sec.*, 342 Fed. Appx 172, 175-176 (6th Cir. 2009) (citing *Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 652 (6th Cir. 2006)).

Plaintiff argues that it was error for the ALJ to give more weight to Dr. Kwock and less weight to his treating provider, PA Sundberg, and consultative examiner, NP Spickerman. Plaintiff argues that under the old rules – which, as noted above, are applicable here because Plaintiff filed his application on March 5, 2015 – treating providers were granted controlling weight. That is definitely true, but SSR 06-03p (rescinded effective March 27, 2017), applicable during the same relevant time period provided that only "acceptable medical sources," such as licensed physicians, could be considered treating sources that are given controlling weight. (*Id.*) Other sources,

9

such as NPs and PAs, were not "acceptable medical sources" but their opinions could be used to provide insight into the severity of impairments and how the impairments may affect an individual's ability to function. (*Id.*) Thus, opinions from NPs and PAs could not be used to establish the existence of a determinable impairment. (*Id.*) PA Sundberg's opinion evidence is based on an RFC questionnaire that she filled out in 2015, so it is difficult for Plaintiff to argue that PA Sundberg's RFC questionnaire answers are entitled to controlling weight under the old rules when considering SSR 06-03p. Regardless, it is the opinion of the undersigned that for the reasons set forth below, the ALJ did not err in weighing the medical opinions.

The ALJ gave significant weight to Dr. Kwock's opinion that Plaintiff was capable of light work with restrictions. (ECF No. 6-17, PageID.1265.) The ALJ found that as a board-certified orthopedic surgeon, Dr. Kwock was well qualified to offer opinions on Plaintiff's medical issues. (*Id.*) Dr. Kwock testified at the February 28, 2024, hearing. (*Id.*, PageID.1298-1302.) Dr. Kwock listened to Plaintiff's testimony and stated that he reviewed records between February 2014 to 2019. (ECF No. 6-17, PageID.1301.) The ALJ found that Dr. Kwock's testimony was consistent with the medical record:

> Dr. Kwock's assigned residual functional capacity is consistent with the medical and other evidence of record. As detailed above, the record does not show a documented need for an assistive device or an inability to use one or both of the upper extremities. The claimant generally exhibits full strength of the bilateral upper and lower extremities, intact range of motion, normal sensory functioning, normal coordination, and a normal gait (Exs. 7F/4, 16F/1, 18F/6, 19F/4, 14, 20F/3, 6, 21F/7, 26F/5, 34F, 40F/2, 7, 41F/7). The residual functional capacity is also generally consistent with the claimant's abilities for participation in daily activities. As noted above, the claimant is able to operate a vehicle, which requires the ability to maneuver and maintain grip on the wheel and push acceleration and brake pedals (Ex. 38F/1). He is also able to hunt, requiring the ability to carry and operate weapons as well as the ability to navigate over uneven terrain (Ex. 38F/1).

(*Id.*, PageID.1265.)

The ALJ gave little weight to NP Spickerman's opinion that Plaintiff could carry, push, and pull less than 10 pounds (8 pounds), sit for 5 minutes, stand for 2-3 minutes, walk for 20 minutes, and never perform any postural activities or reaching and has manipulative limitations. (*Id.*, PageID.1266.) NP Spickerman examined and evaluated Plaintiff on January 14, 2023. (ECF No. 6-24, PageID.1661-1669.) The ALJ explained:

> In addition to being less qualified than Dr. Kwock, NP Spickerman has not provided a well-supported basis for her opinions; rather, they appear to be based primarily on the claimant's subjective complaints. Dr. Kwock testified that his opinions were based on the objective medical evidence. Noted is that the claimant's reported pain severity appears to have been overstated when compared to treatment notes of providers at examinations within close proximity with and even subsequent to the consultative examination, where his pain levels were much lower (Exs. 37F/2, 40F/2, 7, 41F/2). In contrast to Dr. Kwock, NP Spickerman did not review the longitudinal medical evidence. Additionally, NP Spickerman's opinions are inconsistent with the longitudinal examination findings, which show full strength of the bilateral upper and lower extremities, intact range of motion, normal sensory functioning, normal coordination, and a normal gait (Exs. 7F/4, 16F/1, 18F/6, 19F/4, 14, 20F/3, 6, 21F/7, 26F/5, 34F, 40F/2, 7, 41F/7). Moreover, the limitation that the claimant could never perform any postural maneuvers is not only inconsistent with examination findings, but also inconsistent with the claimant's daily activities, which include the abilities to attend to daily activities of living, feed and clothe himself and operate a motor vehicle, as examples.

(ECF No. 6-17, PageID.1266.)

The ALJ similarly determined that PA Sundberg's opinion from April 2015 was

entitled to minimal weight because she relied on minimal record evidence. (*Id.*, PageID.1267.) PA Sundberg filled out a Physical Residential Functional Capacity Questionnaire[1] dated April 20, 2015, and noted that her observations "are subjective. Maybe best filled out by a neurosurgeon."[2] (ECF No. 6-8, PageID.751-754.) PA Sundberg opined that Plaintiff could sit for less than two hours and stand/walk about two hours out of an eight-hour day. PA Sundberg stated that Plaintiff could not sit, stand or walk for prolonged periods and would require work that allowed him to shift positions and take frequent unscheduled breaks. (ECF No. 6-17, PageID.1266.) PA Sundberg limited Plaintiff to occasional lifting of 20 pounds and frequent lifting of less than 10 pounds. (*Id.*) She limited his postural activities and indicated he would be absent multiple days per month. (*Id.*) The ALJ explained why PA Sundberg's opinion was afforded minimal weight:

---

[1] This form is essentially a check box form without any significant explanation. An ALJ is not bound by conclusory statements of doctors, particularly where they appear on "check-box forms" without explanations citing detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 465, 474-475 (6th Cir. 2016). "Form reports in which a doctor's obligation is only to check a box, without explanations of the doctor's medical conclusions are weak evidence at best." *Smith v. Comm'r of Soc. Sec.*, No. 13-cv-12759, 2015 WL 899207, at * 14 (E.D. Mich. Mar. 3, 2015); *see also Ashley v. Comm'r of Soc. Sec.*, No. 1:12-cv-1287, 2014 WL 1052357, at * 8 n.6 (W.D. Mich. Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms by treating physicians[.]").

[2] There is a written notation at the top of the first page of the document, written by Plaintiff, which states, "that I was not present at the time of the filling out of these papers. I do disagree with some of the answers." (ECF No. -8, PageID.751.)

> This opinion is entitled to minimal weight for several reasons in addition to being less-qualified than Dr. Kwock to offer medical opinions. First, it is not supported as Ms. Sunderberg undermined her own statement. She provided that her assessment was subjective and stated the form would be best filled out by the claimant's neurosurgeon or pain management and rehabilitation provider rather than herself.
>
> Second, PA Sundberg's work preclusive assessment is not consistent with the evidence of record. On examination, the claimant is not observed to be in any distress and generally exhibits reasonably good musculoskeletal and neurologic functioning (Exs. 7F/4, 16F/1, 18F/6, 19F/4, 14, 20F/3, 26F/8, 37F/2, 8, 40F/7, 41F/7).
>
> Third, PA Sunderberg's determination that the claimant would be frequently absent from work is speculative and without basis in the record. The record does not document frequent no shows or cancellations of appointments that might lend to a conclusion that the claimant could not satisfy his obligations.

(*Id.*)

In the opinion of the undersigned, the ALJ did not err in giving great weight to Dr. Kwock's opinion. As the ALJ explained, Dr. Kwock is a board-certified orthopedic surgeon, and his opinions were based upon review of years of medical records, and after listening to Plaintiff's hearing testimony regarding his limitations. Further, the ALJ explained that in addition to having expertise, Dr. Kwock's opinions were consistent with the medical evidence and Plaintiff's abilities and daily activities. The ALJ explained that NP Spickerman's opinion was not well-supported and appeared to be based on Plaintiff's subjective complaints. Further, the ALJ pointed out that, unlike Dr. Kwock's opinions, NP Spickerman did not consider the overall medical record. Finally, PA Sundberg filled out an RFC questionnaire in 2015, after she provided back and knee pain physical therapy 1-2 times per month for 6 months. (ECF No. 6-8, PageID.751.) As the ALJ pointed out, PA Sundberg noted that her answers were subjective and that a neurosurgeon or pain management and

13

rehabilitation provider's opinion could provide a better opinion. (*Id.*, PageID.754.)

It is the opinion of the undersigned that ALJ O'Grady gave good reasons for giving significant weight to Dr. Kwock's opinions and fully explained her reasoning for giving little weight to NP Spickerman's opinion and minimal weight to PA Sundberg's opinion. ALJ O'Grady did not err in weighing the opinion evidence and in determining Plaintiff's RFC.

## IV. Recommendation

Accordingly, it is respectfully recommended that the Court affirm the decision of the Commissioner because substantial evidence exists to support the ALJ's decision that Plaintiff was not disabled under the Social Security regulations.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: July 30, 2025                                   /s/ *Maarten Vermaat*
                                                      MAARTEN VERMAAT
                                                      U.S. MAGISTRATE JUDGE